<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| WILLIAM WOLTMANN, SR.,<br><br>         Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | Civil No. 07-2589(RMB)<br><br>**OPINION** |

APPEARANCES:

Robert Anthony Petruzzelli, Esq.
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003

Kristina Danielle Cohn, Esq.
Social Security Administration
26 Federal Plaza Room 3904
New York, NY 10278

**BUMB**, United States District Judge:

**Introduction:**

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. 405(g), to review the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying the application of Plaintiff, William Woltmann Sr., (hereinafter "Plaintiff" or "Woltmann"), for Disability Insurance Benefits

1

(hereinafter "DIB").

## II. Background

### a) Procedural History:

Plaintiff filed a DIB application on January 2, 2004, alleging a disability onset of date July 19, 2003. (R. 63-65). This application was denied both initially and upon reconsideration. (R. 28-32, 36-39). On April 28, 2005, Plaintiff filed a Request for Administrative Hearing and a hearing was held before ALJ Daniel W. Shoemaker, Jr., on July 25, 2006. (R. 39-40 & 271-308). On September, 29, 2006, the ALJ issued a decision denying Plaintiff's claim. (R. at 10-23). Following this denial, Plaintiff filed a Request for Review by the Appeals Council. (R. 8-9). The Appeals Council denied the Request in a May 9, 2007, decision, which became the final decision of the Commissioner. On June 4, 2007, Plaintiff filed the above-captioned action seeking review of the Commissioner's determination.

### b) The Record:

#### i) Hearing Testimony

At the July 25, 2006 Administrative Hearing, Plaintiff testified that he was not working and that he became disabled as of July 19, 2003, after falling from a tree. (R. 277). Plaintiff returned to his job driving a dump truck work in August of 2005, but had to stop due to his left shoulder. (Id.) He then

returned and drove an easier dump truck but they "took him out of the truck" so he could not continue.  (R. 279).  In January 2006, Plaintiff began to drive a third truck but because he turned the steering wheel with his left arm and shifted with his right, his left arm would lock up, come out of the socket halfway, and stop (R. 279, 291).

In a prior 1984 accident, Plaintiff fell between 27 to 34 feet and, as a result, has some residual brain damage. (R. 285). Plaintiff testified that he has a poor short term memory such that, when he was working, he had to write down his job duties and those of his subordinates, and which trailers and materials to pick up.  (R. 284-85).

Following the 2003 injury, Plaintiff had multiple surgeries with Drs. Harhay and Williams, that did not restore the full use of his left arm.  (Id.)  Plaintiff testified that he has no lifting abilities with his left arm, that it would be difficult to even lift a box of tissues, and that he has constant pain in his left shoulder that increases with activity or damp/rainy weather.  (R. 285).  Plaintiff also testified that the shoulder pain impacts his ability to stand and walk because he has to keep weight off his left shoulder. (R. 293).

Plaintiff testified that he is not currently taking prescription pain killers because Dr. Williams will not prescribe narcotics and because he suffers from Barrett's Disease.  (R.

286-87).  Plaintiff testified that he is currently taking
Cymbalta and Lunesta, as prescribed by Dr. Morelli, a
psychiatrist whom he began seeing in April 2006. (R. 287, 294).
Despite taking Cymbalta, Plaintiff testified that he still is
agitated and nasty. (Id.).

Plaintiff has two children and he drives everyday to take
the children somewhere or to go to the store. (R. 277).  He
testified that drying himself off and getting dressed are
difficult, but that he vacuums and dusts as much as he can. (R.
289).

At the hearing in front of the ALJ, Vocational Expert ("VE")
Slavin testified.  Slavin recounted Plaintiff's prior semi-
skilled, medium work and heavy work. (R. 296).  The ALJ asked the
VE to consider a hypothetical worker who could stand and or walk
six hours in an eight hour workday, lift and carry twenty pounds
occasionally, and ten pounds frequently, with the dominant right
arm, lift and carry ten pounds occasionally with the left arm but
is restricted to less than ten pounds in the left arm. (R. 298).
The VE was also told that the hypothetical worker is not able to
understand, remember or carry out detailed instructions, but
otherwise has no mental limitations. (R. 299).

Based on the hypothetical, the VE stated that Plaintiff
could not perform any of his past jobs due to the need to avoid
vibration and dangerous equipment. (R. 300).  Instead, the VE,

4

taking into consideration Plaintiff's vocational factors, stated that the hypothetical worker could work as an assembler of plastic hospital products, an unskilled job where the physical demand is light.[1] (R. 300).  When asked, the VE indicated that pace and persistence were needed to perform unskilled jobs. (R. 303).

ii) Other Records

Plaintiff described his activities of daily living in Exhibit 6E and indicated that he vacuums, sweeps and puts clothes away for his children, he is also able to drive himself. (R. 109-110).  Plaintiff indicates that while he is able to go shopping for everyday foods, (R. 143), he requires assistance with buttons and overhead shirts and with other tasks. (R. 140-41).  Cold and damp weather cause him pain. (R. 158).

The report of Ronald Bagner, M.D., dated August 13, 2004, reveals that Plaintiff had four operative procedures on his left shoulder. (R. 193).  While the report noted that Plaintiff ambulates slowly, it also indicated that he was able to get on and off the exam table without difficulty, dressed and undressed without assistance and was not uncomfortable in a seated position during the interview. (R. 194).  Finally, while there was pain in

---

[1] "Light work" is usually defined as lifting up to 20 pounds maximum with frequent lifting or carrying of objects weighing up to 10 pounds.  <u>Post v. Hartford Ins. Co.</u>, 501 F.3d 154, 172 (3d Cir. 2007).

all movements of the left shoulder the right shoulder had a
normal range of motion (Id.).

The Record also contains progress notes from AtlantiCare
Behavioral Center, which reflect that Plaintiff felt irritable
and was prescribed Paxil, Buspar, Risperdal, and Lamictal. (R.
207-09). The notes also reflect that, while Plaintiff denied
depression, he felt "nasty" and sleeps only four and one half to
five hours a night. (R. 208).

Hugh D. Moore, Ph.D., gave the Plaintiff a psychiatric
examination and noted that Plaintiff's thought processes were
coherent and there was no evidence of delusions or disordered
thinking. (R. 221). Plaintiff reported that, within the limits
of his shoulder pain, he could cook, clean, shop, and drive. (R.
222). Dr. Moore noted that, vocationally, Plaintiff seemed
capable of understanding and following simple instructions (Id.).
He also appeared able to maintain attention and concentration for
tasks, could attend to a routine and maintain a schedule. (Id.).
Overall, while Plaintiff appeared to have psychiatric problems,
those problems did "not appear to be significant enough to
interfere with [his] ability to function on a daily basis."
(Id.).

Dr. Arthur Howard completed a "Physical Residual Functional
Capacity Assessment" indicating that Plaintiff could occasionally
lift twenty pounds, frequently lift or carry ten pounds, stand or

walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday. (R. 225). He also found that Plaintiff's ability to push and/or pull or reach overhead was limited in the upper extremities on the left side. (R. 225, 227).

The Mental Residual Functional Capacity Assessment, completed by Richard Nobel, Psy.D., indicates that Plaintiff's ability to understand, remember and carry out detailed instructions was "Moderately Limited" (R. 232). Further, the Psychiatric Review Technique forms, also completed by Dr. Nobel, indicate that Plaintiff's activities of daily living, social functioning and concentration, persistence or pace were "mildly" limited. (R. 246). The treatment notes of Louis Morelli, M.D., Plaintiff's treating psychiatrist, dated April 6, 2006 through July 13, 1006, indicate that Plaintiff is in chronic pain, feels "all wound up", has a "bad attitude" and snaps easily. (R. 269-70).

The notes of Dr. Williams, Plaintiff's treating physician, indicate that post-surgery, Plaintiff was in a little bit less pain. (R. 250). The notes dated March, 2, 2005, contain permanent work restrictions of "no lifting more than 10 pounds with both arms and no overhead use with the left arm." (R. 253).

**Standard of Review:**

When reviewing a final decision of the Commissioner, the

Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "'Supported by substantial evidence'" means more than a "'mere scintilla.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir 1999).  It means "'such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion.'"  Id.  Where the ALJ's findings of fact are supported by substantial evidence, this Court is bound by the findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  Claussen v. Chater, 950 F. Supp. 1287, 1292 (D.N.J. 1996) (citing Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983)).

This Court must review the evidence in its totality. Ahearn v. Commissioner of Social Sec., 165 Fed. Appx. 212, 215 (3d Cir. 2006); Daring v. Heckler, 727 F.2d 64, 70 (3d Cir 1984). However, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

1992); Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984).

Where substantial evidence of record supports the Commissioner's

findings, those findings are conclusive, even "where [the]

evidence in the record is susceptible to more than one rational

interpretation." Alexander v. Shalala, 927 F. Supp. 785, 791

(D.N.J. 1995), aff'd per curiam 85 F.3d 611 (3d Cir. 1996).

The Commissioner "must adequately explain in the record his

reason for rejecting or discrediting competent evidence." Ogden

v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster

v. Heckler, 786 F.2d 581 (3d Cir. 1986).  Access to the

Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and
> has sufficiently explained the weight he has given to
> obviously probative exhibits, to say that his decision
> is supported by substantial evidence approaches the
> abdication of the Court's duty to scrutinize the record
> as a whole to determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(citations

omitted).  While the ALJ must review and consider pertinent

medical evidence, review all non-medical evidence, and "explain

[any] conciliations and rejections," Burnett v. Comm'r of Soc.

Sec., 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no

requirement that the ALJ discuss in [his] opinion every tidbit of

evidence included in the record." Hur v. Barnhart, 94 Fed. Appx.

130, 133 (3d Cir. 2004); see Fargnoli v. Halter, 247 F.3d 34, 42

(3d Cir. 2001) ("Although we do not expect the ALJ to make

reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Overall, the Court must set aside the Commissioner's decision if the Commissioner did not take the entire record into account or failed to resolve evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997)(citing Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978)).

In addition to the substantial evidence inquiry, this Court must review whether the administrative determination was made upon application of the correct legal standards. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983). This Court's review of legal issues is plenary. Sykes, 228 F.3d at 262; Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

**"Disability" and Disability Insurance Benefits Standard:**

The Social Security Act (the "Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

10

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v); Giese v. Commissioner of Social Security, 251 Fed. Appx. 799, 801-02 (3d. Cir 2007).

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, or is expected to end in death, the claimant will be found "disabled."

4.   If the claimant is found to have the residual functional capacity ("RFC")[2] to still perform his past relevant work ("PRW"), he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's RFC,

---

[2]   Defined as what a person is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a) and 416.945.

11

age, education and work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

Id.

This analysis involves a shifting burden of proof. Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  In the final step, however, the Commissioner bears the burden of proving that work is available for the petitioner: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform[.]"  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).


**Discussion:**

In his decision, the ALJ found that, based on the evidence of record, Plaintiff "has not been under a definition of 'disability' . . . at any time through the date of this decision." (R. 14).  As an initial matter, the ALJ found that Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible in light

12

of his daily activities, medical treatment, and his demeanor at the hearing. (R. 16).

The ALJ noted that Dr. Williams gave Plaintiff a permanent work restriction of "no lifting more than ten pounds with both arms and no overhead use with the left arm." (R. 19).  From this information, the ALJ gleaned that as of the date of Dr. Williams' report, Plaintiff had the RFC to perform "a wide range of sedentary work tasks."  (Id.).  The ALJ referred to the reports of Dr. Ronald Bagner, Dr. Gerald Williams, and a State Agency Physician for his finding that Plaintiff had a Residual Functional Capacity ("RFC") to occasionally lift weights of 20 pounds with his right, dominant arm and frequently lift and carry weights of ten pounds with his dominant right arm. (R. 20-21).

The ALJ also discussed Plaintiff's mental limitations including his reported problems with stress and anxiety and the fact that he has been prescribed Risperdal in for mood stabilization. (R. 17).  The ALJ reviewed Plaintiff's evaluation at the AtlantiCare Behavioral Center and noted that there was no evidence of any functional restrictions. (Id.)  The ALJ also reviewed the psychiatric exam conducted by Hugh D. Moore, who noted that Plaintiff had a diagnosis of mood disorder with anxious features due to chronic pain.  Dr. Moore noted that Plaintiff's prognosis was "good." (Id.).  Additionally, the ALJ reviewed the findings of Dr. C. Richard Nobel, which found that

13

Plaintiff only had "mild" symptoms of restrictions of daily activities, difficulty maintaining social function, and difficulties maintaining concentration, persistence and pace. (R. 18). Overall, the ALJ determined that Plaintiff "did not have any significant functional restrictions associated with his non-exertional mood disorder problem based in the information gleaned from [the Psychiatric Review Technique Form."] (Id.).

Finally, the ALJ discussed the hypothetical posed to the VE which assumed an ability to sit six hours in an eight hour workday, stand or walk six hours of an eight hour workday and occasionally lift and carry twenty pounds with his dominant right arm and frequently lift and carry ten pounds with his dominant right arm. (R. 19). The hypothetical included limitations for lifting and carrying with the left arm and assumed the ability to occasionally, climb stairs, balance, crouch and frequently kneel and stoop. (Id.). Regarding mental non-exertional limitations, the ALJ's opinion states that the VE was instructed to assume a fair ability to remember and understand detailed instructions and carry them out. (R. 20).

Based on the ALJ's hypothetical, the VE described three kinds of jobs of a "light, unskilled type." (Id.). These job included work as an assembler of plastic hospital products, bench assembler of electrical equipment and parking clerk. (Id.). The ALJ adopted the VE's opinion and found that the Plaintiff was not

14

disabled. (Id.)

In seeking review, Plaintiff avers that the ALJ improperly discounted Plaintiff's testimony regarding his pain and limitations.  He also argues that the ALJ failed to properly evaluate the medical evidence of record and, in doing so, failed to properly determine his Residual Functional Capacity ("RFC").

*1) Did the ALJ Properly Evaluate Plaintiff's Testimony Regarding Pain and Limitations?*

The ALJ properly evaluated Plaintiff's subjective complaints of pain and his mental limitations.  In his decision, the ALJ determined that "[t]he claimant's subjective complaints, to the extent alleged, are not credible because they are not supported and are inconsistent with the reports of treating and examining physicians." (R. 22).  More specifically, the ALJ found that:

> t]he claimant's statements concerning his impairments
> and their impact on his ability to work are not
> entirely credible in light of the claimant's own
> description of his activities and lifestyle; the degree
> of medical treatment required; discrepancies between
> the claimant's assertion and information contained in
> the documentary reports; the claimant's demeanor at
> hearing; the reports of the treating and examining
> practitioners; the medical history; the findings made
> on examination; [and] the claimant's assertions
> concerning his ability to work.

(R. 16).

Plaintiff avers that the ALJ left out crucial testimony regarding Plaintiff's symptoms and factors that aggravate the

same symptoms.  Moreover, Plaintiff argues that the ALJ misstated the extent of Plaintiff's activities and that the ALJ failed to note, in accord with Social Security Ruling ("SSR") 96-7p, that Plaintiff's pain increases in damp and rainy weather and ignored Plaintiff's testimony regarding medications.

Plaintiff also avers that the ALJ failed to mention certain records regarding Plaintiff's non-exertional mental impairment. Specifically, Plaintiff complains that the ALJ failed to mention the records of Dr. Morelli, Plaintiff's treating psychiatrist, dated April 6, 2006 through July 13, 2006.  Moreover, Plaintiff complains that the ALJ left out of his opinion that Plaintiff has difficulty dealing with stress, failed to note the multiple prescription medications given, failed to note that Plaintiff reported feeling "nasty," and that Plaintiff was irritable and moody.

The Defendant responds by pointing to the ALJ's consideration of Plaintiff's testimony regarding his daily activities as supported by the record - i.e., Plaintiff vacuums, sweeps, mops, puts clothes away, drives a car, goes food shopping and helps with his children.  (R. 109-10, 140, 142, 277). Moreover, Defendant points out that there is medical/objective evidence that is inconsistent with Plaintiff's objective complaints.

Subjective complaints of pain "do not in themselves

16

constitute disability." <u>Green v. Schweiker</u>, 749 F.2d 1066, 1070 (3d Cir. 1984); 20 C.F.R. § 404.1529(a). While an ALJ is required to give serious consideration to a plaintiff's subjective complaints of pain, <u>Welch v. Heckler</u>, 808 F.2d 264, 270 (3d Cir. 1986), "it is well established that the ALJ has discretion to evaluate the credibility of a claimant to arrive at an independent judgment, in light of medical evidence, regarding the true extent of pain alleged by the claimant." <u>Brown v. Schweiker</u>, 562 F. Supp. 284, 287 (E.D. Pa. 1983)(quotations omitted).

> SSR 96-7p requires that

> '[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.' The SSR further mandates that the 'determination . . . *must contain specific reasons for the finding on credibility*, supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'

<u>Williams v. Barnhart</u>, 211 Fed. Appx. 101 , 104-05 (3d Cir. 2006) (quoting SSR 96-7p)(emphasis in original).

Where subjective complaints of pain indicate a greater severity of impairment than the objective medical evidence supports, the ALJ can give weight to factors such as physician's reports, lay opinions and the plaintiff's daily activities. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p**,** 1996 WL 374186 at *4

(requiring the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements"). A reviewing court cannot substitute its own determination of credibility where the ALJ properly supports his determination, given that the ALJ has had the opportunity to observe the plaintiff firsthand. See <u>Weir v. Heckler</u>, 734 F. 2d 955, 962 (3d Cir. 2004).

In this case, the ALJ properly supported his credibility determination with substantial evidence from the record and provided specific reasons for the finding on credibility to enable this Court meaningful review. For example, the ALJ carefully considered Plaintiff's subjective complaints of pain and examined his testimony alongside all the medical evidence, ultimately concluding that the testimony seemed inconsistent with Plaintiff's daily activities and exaggerated as compared to the medical evidence. (R. at 16).

In his opinion, the ALJ noted that Plaintiff testified that he has constant left shoulder pain, that he is not able to lift a box of tissues and that he has to rest his left arm on a constant basis. (R. 15). The ALJ considered these complaints along with the medical report of Dr. Ronald Bagner, who noted that while there was pain "on range of motion of the claimant's left shoulder" Plaintiff was "able to get on and off the examining table without difficulty, dress and undress himself without

18

difficulty, and was not uncomfortable in a seated position." (R. 16). Further the ALJ referred to the reports of Plaintiff's treating physician, Dr. Gerald Williams, contained in exhibit 13F, which indicate that, post-surgery, Plaintiff was in "a little bit less [pain] than prior to surgery" and that plaintiff only complained of "a little bit of scapular pain overall." (R. 19, 250-51). The ALJ noted that Plaintiff is able to do chores around the house and that he drives regularly without functional restrictions. (R. 21). This medical evidence, along with Plaintiff's own testimony that regarding his daily activities, provide substantial evidence for the ALJ's finding that Plaintiff's subjective complaints of pain were not entirely credible.

The ALJ also properly evaluated Plaintiff's complaints regarding his mental impairment. The ALJ considered Plaintiff's treatment, including medication provided at the AtlantiCare Behavioral Center. (R. 17). The ALJ correctly noted that the information from AtlantiCare, in exhibit 8F, the consultive examination by psychologist, Hugh Moore, Exhibit 9F, and a State Agency reviewing psychologist Richard Nobel, support the ALJ's determination that there was "no severe continuing ongoing mood disorder or psychiatric problem causing [Plaintiff] any functional restrictions." (R. 17). For example, while the ALJ considered Plaintiff's complaints regarding stress and anxiety

and the fact that he took Risperdal for mood stabilization, (R. 17), the notes in exhibit 8F reveal that Plaintiff reported "doing well" and "denies depression" (R. 207-08).  Moreover, Dr. Moore's report, considered by the ALJ, (R. 17), reveals that Plaintiff "gets along well with friends and family" and vocationally, Plaintiff "appears to be capable of understanding and following simple instructions. . . [and] appears to be capable of maintaining attention and concentration for tasks." (R. 222).  Dr. Moore made these conclusions even while acknowledging that Plaintiff "appears to have difficulty dealing with stress."  (R. 222).

While Plaintiff complains that the ALJ failed to discuss various details of Plaintiff's subjective complaints, this Court is mindful that "[t]here is no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  Therefore, this Court finds that the ALJ's determinations regarding Plaintiff's subjective complaints regarding his pain and mental limitations are well supported by substantial evidence.

*2) Was the Residual Functional Capacity Determination Proper?*

The Plaintiff seeks review of the ALJ's decision because he believes that the ALJ failed to properly weigh the evidence of

record, including the determinations of Plaintiff's treating physicians, and, as a result improperly determined Plaintiff's physical and mental RFC.  Further, Plaintiff argues that the ALJ failed to satisfy the requirements of SSR 96-8p.

Residual Functional Capacity ("RFC") is what a person is still able to do despite the limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a) and 416.945.  SSR 96-8p dictates that the RRC assessment is a "function-by-function assessment based upon all the relevant evidence of an individual's ability to do work related activities."  SSR 96-8p.  In order to meet the requirements of 96-8p, the ALJ "must 'specify the evidence that he relied upon to support his conclusion.'"  Pearson v. Barnhart, 380 F. Supp. 2d 496, 506 (D.N.J. 2005).  Moreover, "the ALJ's residual functional capacity assessment must be 'accompanied by a clear and satisfactory explanation of the basis on which it rests.'"  Id. (quoting Farqnoli v. Halter, 247 F.3d 34, 41 (3d Cir. 2001)).

"If the ALJ rejects probative evidence from a treating physician he is required to explain why." Correa v. Commissioner of Soc. Sec., 381 F. Supp. 2d 386 (D.N.J. 2004).  Also, "the opinion of a treating physician is generally entitled to more weight than a one-time consultative examiner[.]"  Brown v. Astrue, No. 07-1132, 2008 U.S. Dist. LEXIS 18963 at *39 (D.N.J. Mar. 12, 2008).  However, state agency consultants are "highly

qualified physicians . . . who are also experts in Social Security Disability Evaluation." 20 C.F.R. § 404.1527(f)(2)(I).

This Court finds that the ALJ's determination of Plaintiff's physical RFC is not supported by substantial evidence. As indicated in the ALJ's Opinion, Plaintiff's treating surgeon, Dr. Gerald Williams, gave Plaintiff a permanent work restriction of "no lifting more than ten pounds with both arms and no overhead use with the left arm." (R. 19)(citing Exhibit 13F). After citing Dr. Williams' report, the ALJ states that "[t]he unambiguous conclusion to be drawn from the orthopedic assessment of the claimant's treating physician . . . was that the claimant possessed the residual functional capacity to perform a wide range of sedentary work[3] tasks, certainly as of the date of his report of March 2, 2005[.]" (R. 19). The ALJ then discusses the RFC, as posed to the vocational expert, which assumed, inter alia, an ability to, "occasionally lift and carry twenty pounds with the dominant right arm; and frequently lift dnd carry ten pounds with his dominant right arm." (R. 19). The ALJ states that this RFC is "based predominantly on Exhibits 4F, 10F and

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 416.967(a).

13F," yet 13F is the very exhibit containing the permanent work restriction of lifting no more than ten pounds.[4]   The ALJ has failed to resolve this contradiction.

Dr. Arthur Howard, a non-examining physician, concluded in the Physical Residual Functional Capacity Assessment form that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. (R. 225).  While this evidence exists, the ALJ failed to resolve the conflict between this finding and Plaintiff's treating physician's permanent restriction.  Moreover, instead of explaining why the permanent work restriction does not apply in light of the evidence, the ALJ appears to rely on it: "[t]he RFC based predominantly on Exhibits 4F, 10F and 13F . . . ." (R. 19)(emphasis added).

"While this Court is not commenting on whether Plaintiff can ultimately show [he] is disabled in light of the foregoing evidence, the Court is mindful that the decision of the ALJ must explain why the ALJ has rejected medical evidence that supports Plaintiff, and which is inconsistent with other medical evidence[.]" Gilbert v. Astrue, 07-452, 2008 U.S. Dist. LEXIS

---

[4] ALJ placed weight on exhibits 4F and 9F and characterized them as by "treating" physicians.  Instead, these exhibits were completed by consultive examiners.

6680 at *21 (D.N.J. Jan. 30, 2008).  Without a discussion or reasoning of how the ALJ arrived at his RFC determination despite the treating physician's findings, this Court cannot say that substantial evidence exits to support it.  "Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."  Fargnoli, 247 F. 3d at 42.[5]

The ALJ's determination of Plaintiff's mental residual capacity suffers from a different infirmity.  While Plaintiff argues that the ALJ failed to recount all of the evidence such as the supplemental records of Dr. Morrelli, the multiple medications prescribed, and the fact that Plaintiff is irritable and has problems dealing with stress, the opinion reveals that these items were considered.  In fact, that ALJ noted that Plaintiff wanted stress management, had been given medication for mood stabilization, and that he had difficulty maintaining social function and maintaining concentration persistence and pace. (R. 17-18).  Moreover, "[t]here is no requirement that the ALJ

_____

[5] The RFC, if inaccurate, impacts the recommendations of the vocational expert because an ALJ must accurately convey all of a claimant's "credibly established limitations" in a hypothetical question posed to a vocational expert.  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

discuss in [his] opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).

However, Plaintiff also argues that while the ALJ found that Plaintiff had mild symptoms in activities of daily living and social functioning and moderate symptoms in maintaining concentration, persistence and pace, (R. 20), the VE was not presented with Plaintiff's persistence and pace limitations. Because the VE testified that concentration, persistence and pace are required for the unskilled jobs discussed (R. 303), Plaintiff submits the RFC is not based on all the relevant evidence.

Defendant argues that these Section 12.00 "B" criteria need not be represented in the ALJ's residual functional capacity determination because the limitations set forth in paragraphs :B" & "C" of the adult mental disorder 12.00 listings (set forth in Section III of the Psychiatric Review Technique Form) are not a residual functional capacity assessment, but are used to rate the severity of the mental impairment.

While Defendant is correct that the "B" criteria are to be used to rate the severity of the impairment, this Court is concerned that the VE was not presented with a complete hypothetical from which to base his assessment. While the ALJ acknowledged that Plaintiff had moderate difficulty maintaining concentration, persistence and pace, the hypothetical posed to the VE stated that "[o]ur hypothetical worker is not able to

understand, remember or carry out detailed instructions, but otherwise has no mental, other mental limitations." (R. 299)

While an ALJ need not convey every impairment merely alleged by a claimant, he is required to accurately convey to the vocational expert all of a claimant's *credibly established* limitations.  <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d Cir. 2005).  Here, the ALJ himself stated that "the clear implication of the psychiatric review technique from . . . was that as of March 20, 2005, the claimant only had 'mild' symptoms of restrictions of daily activities. . . and difficulties maintaining concentration, persistent and pace. . . ." (R. 18).  As stated above, the VE was not told of any difficulty with persistence or pace - mild, moderate or otherwise - in the hypothetical presented.  Thus, the VE was not presented with a complete picture.

Finally, Plaintiff argues that the Opinion fails to engage in the requisite "function-by function" assessment as required by SSR 96-8p.  Pursuant to SSR 96-8p,

> the ALJ is required to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p. Moreover, such a discussion must be made by the ALJ in narrative form, "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.

Pearson v. Barnhart, 380 F. Supp. 2d 496, 505-06 (D.N.J. 2005).
Undoubtedly, the ALJ discussed Plaintiff's ability to "sit,
stand, or walk six hours each in an normal right hour workday
[and] occasionally life weights of twenty pounds with his right,
dominant arm and frequently lift and carry weights of ten pounds.
. . ." (R. 20-21). The ALJ went on to state that Plaintiff's
abilities to perform these task is "not totally eroded by non-
exertional [i.e., mental] limitations" and that, therefore, there
are jobs in the national economy that Plaintiff "is able to
perform on a regular, sustained, reliable basis consistent with
Social Security Rulings 96-8p and 96-9p." (R. 21). The ALJ
discussed Plaintiff's mental limitations at length including a
discussion of the fact that Plaintiff's "moderate limitations
regarding [his] ability to understand and remember detailed
instructions and his ability to carry out detailed instructions
did not preclude [Plaintiff] from performing any of his pervious
work activities . . . ." (R. 18).

    Moreover, as discussed at length above, the ALJ provided the
reasons for his conclusions, including the medical evidence
regarding Plaintiff's left shoulder and mental impairments (R 17-
19). While this Court has found that the ALJ failed to resolve
the conflict with regard to the evidence provided by Plaintiff's
treating physician and that the information provided to the
vocational expert was incomplete, there is no question that the

ALJ cited evidence from the record in support of his conclusions regarding Plaintiff's physical and mental residual functional capacities.  The ALJ has engaged in the requisite function-by-function analysis.

**Conclusion:**

For the reasons discussed above, the Court finds that the ALJ's determination of Plaintiff's physical RFC is not supported by substantial evidence and that the hypothetical posed to the VE was incomplete.  The decision below is vacated and this case is remanded to the ALJ for further consideration consistent with this opinion.  An accompanying Order will issue this date.

Dated: March 26, 2008                    **s/Renée Marie Bumb**
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE